# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD SAUNDERS,**          : | |
|     **Plaintiff,**          : | |
|          : | |
| **v.**          : | **CIVIL ACTION NO. 19-CV-4395** |
|          : | |
| **GEORGE W. HILL CORRECTIONAL**  : | |
| **FACILITY, et al.,**          : | |
|     **Defendants.**          : | |

## MEMORANDUM

**PRATTER, J.**                                                                 **OCTOBER 22nd, 2019**

This matter comes before the Court by way of a Complaint (ECF No. 2), lodged by Plaintiff Richard Saunders, proceeding *pro se*. Also before the Court is Mr. Saunders's Motion to Proceed *In Forma Pauperis* (ECF No. 1). Because it appears that Mr. Saunders is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

## I. FACTS[1]

Mr. Saunders, a prisoner currently incarcerated at George W. Hill Correctional Facility ("GWHCF"), brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the Constitution. (ECF No. 2 at 1, 3-5.) Mr. Saunders's allegations arise from prison conditions that resulted during a ten-day lockdown of Unit 7A of GWHCF from August 5, 2019 through August 15, 2019. (*Id.* at 3-4.)

---

[1] The facts set forth in this Memorandum are taken from Mr. Saunders's Complaint and all the documents and exhibits attached thereto.

Specifically, Mr. Saunders alleges that on August 5, 2019 an unnamed Sergeant at GWHCF was assaulted by an unnamed inmate. (*Id.* at 3.) Mr. Saunders contends that this assault prompted Defendants Warden David Byrne, Deputy Warden Mario Colucci, Superintendent John A. Reilly, and Lieutenant Moore to institute an "emergency response" wherein Defendants and a dozen unnamed correctional officers locked down the unit and handcuffed the inmate responsible for the assault. (*Id.*)

Mr. Saunders alleges that for the first four days of the lockdown, the inmates on Unit 7A were: (1) not given the opportunity to shower;[2] (2) were not provided with "cleaning supplies[;]"[3] and (3) were denied phone and visiting privileges. (*Id.* at 3-4.) Mr. Saunders also asserts that there was no air ventilation for the first four days of the lockdown. (*Id.* at 3.) Subsequently, on or about Friday, August 9, 2019 — approximately the fifth day of lockdown, Mr. Saunders alleges that inmates were not "allowed to [Jumu'ah] [in order] to practice [their] religious belief[s.]"[4] (*Id.* at 4.) On or about Monday, August 12, 2019 — approximately the eighth day of lockdown, Mr. Saunders asserts that inmates were not "allowed to go to the law library[.]" (*Id.*) Finally, Mr. Saunders alleges that no mail was distributed to the inmates for the entirety of the ten-day lockdown, but that by August 15, 2019, "Unit 7A was returned to normal

---

[2] Mr. Saunders alleges that by Friday, August 9, 2019, "everyone" on Unit 7A was provided with a new pin and phone privileges were restored. (*Id.* at 4.) He also asserts that the inmates were permitted to shower by that date as well. (*Id.*)

[3] With respect to Mr. Saunders's use of the term "cleaning supplies," the Court assumes that Mr. Saunders is referring to personal hygiene products like soap or shampoo, given that this allegation arises in the context of inmates allegedly being denied showers, the lack of air ventilation, and Mr. Saunders's constant sweating, resulting in an unpleasant body odor. (*Id.* at 3-4.)

[4] Mr. Saunders alleges that the inmates on Units 7 B, C, and D were permitted visits and allowed to go to religious services that Friday afternoon, while inmates on Unit 7A were not. (*Id.* at 4.)

activities[.]" (*Id.* at 5.) Based on the conditions of confinement he encountered during the lockdown, Mr. Saunders now seeks to bring the following: (1) a Fourteenth Amendment due process claim; (2) an Eighth Amendment deliberate indifference claim; (3) a First Amendment claim regarding free exercise of religion; and (4) a First Amendment claim for access to the courts.[5] (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Mr. Saunders leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous or fails to state a claim. A complaint is subject to dismissal under § 1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss

---

[5] Pages seven, eight, and nine of the Complaint appear to have been written by someone other than Mr. Saunders himself. The handwriting on these pages is different from page to page and is also different from the remainder of Mr. Saunders's hand-written Complaint. These three pages make essentially the same broad factual allegations as are set forth earlier in the Complaint regarding the prison conditions at GWHCF during the lockdown, but it appears these pages are not claims made directly by Mr. Saunders.

To the extent the Complaint seeks to bring claims on behalf of other inmates, Mr. Saunders may not represent others in Court and he likewise may not pursue claims based on harm sustained by third parties. *See, e.g., Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991); *see also Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim) (quotations omitted). Accordingly, any claims Mr. Saunders seeks to bring on behalf of other inmates on Unit 7A will be dismissed without prejudice.

[6] However, because Mr. Saunders is a prisoner, he is obliged to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Mr. Saunders is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Mr. Saunders's Complaint alleges claims for violation of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

With respect to claims challenging conditions of confinement, the Eighth Amendment governs claims brought by convicted inmates, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). As Mr. Saunders's status during his incarceration is not clear from the Complaint, his claim is analyzed under both Amendments. Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seites*, 501 U.S. 294, 298; *Bell v. Wolfish*, 441 U.S. 520, 538-39, 539 n.20 (1979)). In prison condition cases, the state of mind requirement is one of deliberate indifference. *Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam). "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

## III. DISCUSSION

### A. GWHCF is Not a "Person" Subject to Suit Under § 1983

At the outset the Court notes that Mr. Saunders named GWHCF as a Defendant in this action. However, a prison is not considered a "person" subject to suit within the meaning § 1983. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) ("Westmoreland County Prison is not a person capable of being sued within the meaning of § 1983."); *Edwards*, 663 F. App'x at 136 (recognizing prison was not a "person" under § 1983); *see also White v. Knight*, 710 F. App'x 260, 262 (7th Cir. 2018). Accordingly, any claim alleged against GWHCF itself will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(i).

### B. General Conditions of Confinement Claims During Lockdown

With respect Mr. Saunders's conditions of confinement claims against the remaining Defendants, Mr. Saunders does not allege facts sufficient to establish a plausible claim for violations of either the Fourteenth Amendment Due Process Clause or the Eight Amendment based on the conditions he encountered during the ten-day lockdown of Unit 7A at GWHCF.

Generally, courts recognize that prison lockdowns which last for an extended period of time violate the Eighth Amendment. *Liles v. Camden Cty. Dep't of Corr.*, 225 F. Supp. 2d 450, 461 (D.N.J. 2002) (citing *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001)) (concluding that six-month lockdown violated the Eighth Amendment); *see also Hall v. Williams*, 960 F.2d 146 (4th Cir. 1992) (reversing the grant of summary judgment in favor of prison officials and remanding for further proceedings on prisoner's Eighth Amendment conditions of confinement claim regarding deprivation of exercise privileges during a 4.5 month lockdown).

However, "[l]ockdown periods of less than thirty days . . . generally do not violate the Eighth Amendment." *Liles*, 225 F. Supp. 2d at 461 (granting summary judgment in favor of prison officials were prisoners' allegations regarding a twenty-two day lockdown did not established that the lockdown "caused them anything more than inconvenience and discomfort") (collecting cases). "A short-term lock-down . . . does not deprive an inmate of 'the minimal civilized measure of life's necessities.'" *Hill v. Ocean Cty. Jail Complex*, Civ. A. No. 05-6031, 2006 WL 902170, at *3 (D.N.J. Apr. 4, 2006) (dismissing prisoner's conditions of confinement claims for failure to state a claim under § 1915(e)(2)(B)(ii) where he alleged that he was unable to shower and denied visiting, phone, and recreation privileges during a two-day jail lock-down but failed to allege any serious injury as a result). Additionally, a "lock-down for the purpose of ensuring the security and integrity of the . . . prison facility . . . 'falls within the expected perimeters of the sentence imposed' on the" prisoner, and therefore does not amount to a constitutional violation under either the Eighth or the Fourteenth Amendment. *Ebersole v. Wagner*, Civ. A. No. 99-4526, 1999 WL 1241079, at *1 (E.D. Pa. Dec. 20, 1999) (citing *Sandin v. Connor*, 515 U.S. 472, 485 (1995)).

In *Ebersole*, the prison went into lockdown on August 24, 1999 as a result of a prisoner escape. *Id.* Two days later, on August 26, 1999, normal institutional activity resumed in all units except for the unit where the plaintiff was housed. *Id.* Ebersole's unit remained on lockdown for an additional four days. *Id.* As a result of the six-day lockdown, Ebersole filed a § 1983 action asserting that the conditions of his confinement during lockdown "restricted his freedom to exercise, forced him to wear dirty clothes, deprived him of his right to eat in the commissary as well as his right to use the prison's law library, interfered with his right to freely exercise his religion, and denied him opportunity to communicate with the court and his attorneys." *Id.* In ruling on the defendants' joint motion to dismiss, the court in *Ebersole* noted that "the temporary interruption of life experienced by the [prisoner] due to the lock-down was 'not atypical' and presented no 'significant hardship' on the inmate in relation to the ordinary incidents of his prison life." *Id.* (citing *Sandin*, 515 U.S. at 484). Ultimately, the court "conclude[d] that the prison's lock-down of the [p]laintiff's unit for security reasons was not cruel and unusual punishment in violation of the Eighth Amendment, nor was it a deprivation of [his] Fourteenth Amendment 'liberty' interest" and dismissed Ebersole's complaint with prejudice. *Id.*

In the instant case, Mr. Saunders acknowledges that the ten-day lockdown from August 5, 2019 through August 15, 2019 was instituted for security reasons as part of an "[e]mergency response" by prison officials after an unnamed inmate assaulted an unnamed Sergeant on Unit 7A at GWHCF. (ECF No. 2 at 3.) While the lockdown itself appears to have lasted a total of ten days, Mr. Saunders alleges that the suspension of various privileges did not last the entirety of that time period. For example, Mr. Saunders states that all of the inmates on Unit 7A, including Mr. Saunders, were permitted to shower and had their phone privileges restored by Friday,

August 9, 2019 (approximately the fifth day of the lock-down). (ECF No. 2 at 4) ("Friday night we [were] allowed showers and phone calls for the first time in four days.")[7] Moreover, Mr. Saunders alleges only one date on which visitation privileges for inmates on Unit 7A were denied. (*Id.*) ("On Thursday, August 8, 2019 everyone['s] visit[s] on Unit 7A [were] denied[.]")[8] Similarly, Mr. Saunders points to only one specific date during lockdown when inmates were denied access to the law library. (*Id.* at 4-5.) ("On August 12, 2019[,] no one from Unit 7A was allowed to go to the law library[.]") In fact, it appears that the only circumstance that lasted the entirety of the lockdown was mail not being distributed during that time. (*Id.* at 5.) ("[O]n 8-15-19 Unit 7A was returned to normal activities and they gave us mail which they did not pass out from 8-5-19 until 8-15-19.")

Given the relatively short-term duration of the lockdown and the fact that the lockdown itself was specifically instituted for security reasons as part of an "emergency response" to an assault on a prison official, Mr. Saunders's Complaint fails to state a plausible claim that the lockdown resulted in any constitutional violations. All of the conditions of which Mr. Saunders complains lasted either one day, four days, or ten days, at the most. He has not pled facts sufficient to demonstrate that these conditions were atypical, or imposed a significant hardship, such that they support a plausible claim for a constitutional violation. *See Ebersole*, 1999 WL 1241079, at *1. Mr. Saunders has not adequately pled anything more than temporary interruptions of prison life that resulted from a lockdown implemented for security reasons. *Id.* Accordingly, his claims will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii).

---

[7] It also appears that the lack of ventilation was also limited to only the first four days of lock-down. (ECF No. 2 at 3-4.)

[8] Mr. Saunders alleges that he was denied a visit with his mother on this date. (ECF No. 2 at 4.)

### C. Free Exercise of Religion Under the First Amendment

Mr. Saunders alleges that on Friday, August 9, 2019, inmates who observe the Muslim faith were not allowed to attend a weekly prayer service held on Fridays, known as Jumu'ah.[9] (ECF No. 2 at 4.) Mr. Saunders also asks the Court to grant relief in the form of an injunction to "let [M]uslims practice [their] religious beliefs and not den[y] [M]uslims religious services[.]" (*Id.* at 14-15.) To the extent Mr. Saunders seeks to bring a First Amendment Free Exercise challenge regarding Muslim inmates' inability to attend Jumu'ah during lockdown, Saunders has failed to state a plausible claim. As a threshold matter, Mr. Saunders does not allege that he is Muslim, or that he was personally unable to participate in Jumu'ah during lockdown. Moreover, even construing the Complaint liberally to assume that Mr. Saunders is Muslim and that the free exercise of his religion was impacted by his inability to attend prayer service on Friday, August 9, 2019, the Complaint still fails to allege a plausible claim for relief.

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). However, in order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972). Moreover, although inmates retain certain protections afforded by the First

---

[9] Mr. Saunders specifically alleges that "[o]n Friday no one from Unit 7A was allowed to [Jumu'ah] to practice the[ir] religious belief[s]." (ECF No. 2 at 4.) The Supreme Court has explained that "Jumu'ah[] [is] a weekly Muslim congregational service" which is "commanded by the Koran and must be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987).

Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone*, 482 U.S. at 348 (quotations omitted). While the federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities. *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987); *O'Lone*, 482 U.S. at 353. The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted).

In the Complaint, Mr. Saunders alleges that the lockdown was instituted for a short period of time — just ten days — to secure the prison following an assault on a prison official. However, these allegations, even liberally construed, suggest that any interference with respect to Mr. Saunders's exercise of religious freedom was only impacted on a single day — August 9, 2019 — and with respect to a single prayer service. Mr. Saunders does not allege any additional facts in support of such a claim. Based on these allegations, Mr. Saunders has failed to state a plausible claim that Defendants substantially burdened his free exercise rights by preventing him from attending Jumu'ah prayer services on a single isolated date, Friday, August 9, 2019, while his Unit was on lockdown. *Accord Jones v. Malin*, Civ. A. No. 15-5381, 2017 WL 985943, at *3 (S.D.N.Y. Mar. 13, 2017) ("As a matter of law, 'missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion.'") (citing *Gill v. DeFrank*, Civ. A. No. 98-7851, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000), *aff'd* 8 F.

App'x 35 (2d Cir. 2001)); *cf. Alamiin v. Miller*, Civ. A. No. 08-1371, 2010 WL 3603150, at *21 (W.D. Okla Jun. 28, 2010) (concluding that two instances where Jumu'ah services were cancelled due to lockdown was not a substantial burden in RLUIPA context); *but see Von Poole v. NBCI*, Civ. A. No. 17-1594, 2019 WL 4805681, at *18 (D. Md. Sept. 30, 2019) ("Poole has stated a violation of his First Amendment rights to religious practice in alleging . . . that he has been denied access to Jumu'ah services for nine months.").

### D. First Amendment Access to the Courts Claim

To the extent Mr. Saunders is attempting to bring a First Amendment access to the courts claim based on his inability to access the law library with respect to a pending case, (*see* ECF No. 2 at 4-5), this claim is also not plausible. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*

Here, Mr. Saunders makes only the broad allegation that he "ha[d] a law suit in progress" on August 12, 2019, the only day during the lockdown on which he alleges inmates were denied access to the law library. (ECF No. 2 at 4-5.) He fails to allege any additional facts regarding the nature of the underlying cause of action or how a nonfrivolous and arguable claim was lost

because he was denied access to the law library on that day. Mr. Saunders's generalized, conclusory statement is insufficient to state a plausible access to the courts claim as he has not alleged any actual injury to his case. Accordingly, this claim will be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii). However, Mr. Saunders will be permitted leave to file an amended complaint with respect to this particular claim if he is able to cure the defect the Court has identified.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mr. Saunders leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as frivolous and for failure to state a claim. Mr. Saunders will be given leave to file an amended complaint solely with respect to his First Amendment access to the courts claim. All other claims will be dismissed with prejudice because the Court finds amendment would be futile. An appropriate Order follows.

BY THE COURT:

_____
GENE E.K. PRATTER, J.